**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROYDEL HOWE
---

NAME OF PLAINTIFF(S)

v.

THE CITY OF NEW YORK, a municipal corporation;
---
and the NEW YORK CITY ADMINISTRATION FOR

CHILDREN'S SERVICES
---
NAME OF DEFENDANT(S)

JUDGE SWAIN

**'07 CIV 6079**

COMPLAINT

"JURY TRIAL DEMANDED"

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

    __X__    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

    __X__    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).
*NOTE: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

    _____    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166).
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROYDEL HOWE
---

NAME OF PLAINTIFF(S)

v.                                              **COMPLAINT**

THE CITY OF NEW YORK, a municipal corporation;
                                                "JURY TRIAL DEMANDED"
and the NEW YORK CITY ADMINISTRATION FOR

CHILDREN'S SERVICES
NAME OF DEFENDANT(S)

This action is brought for discrimination in employment pursuant to (check only those that apply):

| X | Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.* |

| X | Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).
*NOTE: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.* |

| ___ | Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166).
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.* |

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1. Plaintiff resides at:

| **169-04 88 Avenue, #1J** | , | Jamaica | , |
|---|---|---|---|
| Street Address | | City | |

| Queens | , | NY | , | 11432 | , | (718) 526 1999 | . |
|---|---|---|---|---|---|---|---|
| County | | State | | Zip Code | | Telephone Number | |

2. Defendant(s) lives at, or its business is located at:

| 100 Church Street | , | New York | , |
|---|---|---|---|
| Street Address | | City | |



| New York | , | NY | , | 10007 | , | | . |
|---|---|---|---|---|---|---|---|
| County | | State | | Zip Code | | Telephone Number | |

3. The address at which I sought employment or was employed by the defendant(s) is:

| 66 John Street, 8th Floor | , |
|---|---|
| Street Address | |

| New York | , | New York | | NY | , | 10038 | . |
|---|---|---|---|---|---|---|---|
| County | | City | | State | | Zip Code | |

4. The discriminatory conduct of which I complain in this action includes (check only those that apply):

    \_\_\_\_\_ Failure to hire me.

    \_\_\_\_\_ Termination of my employment.

    __X__ Failure to promote me.

    \_\_\_\_\_ Failure to accommodate my disability.

    __X__ Unequal terms and conditions of my employment.

    __X__ Retaliation

    __X__ Other acts (specify): __Hostile Environment__.

NOTE: *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5. It is my best recollection that the alleged discriminatory acts occurred on: __August 10, 2006 and November 16, 2006 (and continuing from October 2001 to date)__
    *Date*

6. I believe that defendant(s) (check one)

    __X__ is still committing these acts against me.

    \_\_\_\_\_ is *not* still committing these acts against me.

7. Defendant(s) discriminated against me based on my:

    (check only those that apply and explain)

[X] race __Black__      [X] color __Black__

[ ] gender/sex \_\_\_\_\_      [ ] religion \_\_\_\_\_

[X] national origin __Jamaica, W.I.__

[X] age __65__. My date of birth is: __2/15/42__
    *Date*

[ ] disability \_\_\_\_\_

NOTE: *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8. The facts of my case are as follows:

Please refer to the current ATTACHMENTS LABELED as follows:

1). US EEOC letter dated March 19, 2007, acknowledging my complaint. One page labeled as **EXHIBIT A**

2). US EEOC Right to Sue Letter dated April 2, 2007. **EXHIBIT B**

3). A brief Survey of my Tenure with the City of New York, and the Ensuing Conditions dated June 27, 2007. Two pages **EXHIBIT C**

4). My complaint of Discrimination I filed with US EEOC against Administration for Children's Services dated February 20, 2007, 8 pages, including the cover page, labeled as **EXHIBIT D**

*(Attach additional sheets as necessary)*

Note: As additional support for the facts of your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.

9. It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: ___None filed_____.
    *Date*

10. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: __February 20, 2007_____.
    *Date*

4

**Only litigants alleging age discrimination must answer Question # 11.**

11. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct (check one),

    __X__    60 days or more have elapsed.

    _____    less than 60 days have elapsed.

12. The Equal Employment Opportunity Commission (check one):

    _____    has not issued a Right to Sue letter.

    __X__    has issued a Right to Sue letter, which I received on __April 13, 2007__.
                                                    Date

**NOTE:** Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity Commission to this complaint.

WHEREFORE, Plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs, and attorney's fees.

_____
PLAINTIFF'S SIGNATURE

Dated: June 27, 2007

5

**EXHIBIT A**



# U.S. Equal Employment Opportunity Commission
## New York District Office

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
FAX (212) 336-3625
1-800-669-4000

Respondent: NYC ADMN. FOR CHILDRENS SVCS.
EEOC Charge No.: 520-2007-00496
FEPA Charge No.:

March 19, 2007

Roydel Howe
169-04 88 Avenue, Apt. 1J
Jamaica, NY 11432

Dear Mr. Howe:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)

[ X ]   The Age Discrimination in Employment Act (ADEA)

[ ]     The Americans with Disabilities Act (ADA)

[ ]     The Equal Pay Act (EPA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]     Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.
        New York State Division Of Human Rights
        Federal Contract Unit
        One Fordham Plaza, 4 Fl.
        Bronx, NY 10458

Please notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

P.H.
_____
Peter Holland
Investigator
(212) 336-3781

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

Enclosure(s)

cc:

EEOC Form 161 (3/98)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

**EXHIBIT B**

To: Mr. Roydel Howe
169-04 88th Avenue
Jamaica, NY 11432

From: Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2007-00496 | Rosemary Wilkes, Supervisor | 212-336-3771 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statute(s).

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____      04/02/07
Spencer H. Lewis, Jr., District Director     (Date Mailed)

Enclosure(s)

cc: **Respondent: New York City Administration for Children's Services**

8b

**ROYDEL HOWE**                                                                    **EXHIBIT C**

## A BRIEF SURVEY OF MY EMPLOYMENT TENURE WITH THE CITY OF NEW YORK AND THE ENSUING CONDITIONS

1.  In 1981, I joined the City, Office of the Comptroller from the Accountant's established civil servant list. In 1985, I went to HRA as an Associate Accountant, from the established civil servant list. In 1995, I was transferred to a Division of HRA called "ACD". At ACD, I was in the Technical Assistant Unit (TAU) or (TA). (Today, the same unit is referred to as Fiscal Support Unit FSU).  —8c

2.  In 1996, ACS was created. ACD was one of the many HRA divisions that formed ACS. I was with ACD, and therefore, became an ACS employee. I remained in the TAU to date. I am the most senior personnel in this TAU (FSU) in terms of biology and tenure.  —8d

3.  On October 11, 2001, ACS/ACD moved to our current location – 66 John Street, 8th Floor, New York, NY. I was seated near to a relatively new employee, whose behaviors, my other co-workers and I, viewed as abnormal, but who soon became the Supervisor's talking and laughing partner.  —8e

4.  The most recent acts of Discrimination and the like, by the Supervisor against me, occurred on August 10, 2006, and again on November 16, 2006. However, my first narrated complaint against my co-worker's abnormal behaviors was dated October 30, 2001. My complaints, inter alia, that he disturbed me and hindered my work continue to date, unchecked, without correction or cessation.  —8f

5.  The Supervisor and that co-worker created: inhumane, unbearable, fearful, violent and hostile working conditions, and workplace environment; such that must compel me to just run away from my job, or initiate a conflict, or attract an induced heart attack, especially, as a Blackman over sixty years of age. When that did not happen quickly enough for the Supervisor's purposes, the Supervisor started vigorously to build a manufactured case of incompetence, and insubordination against me. His unceasing correspondences to me – never oral, about my poor and or unacceptable work performances, and the like, constituted Progressive Disciplinary Procedures against me; **but,** without Just Cause.  —8g

6.  In the course of my duties, I sent an e-mail dated August 9, 2006, 12:55 PM, to my Supervisor and his Supervisor indicating that: "my Supervisor was threatening to withhold $201,339 from a Day Care Center (DCC) without any form of documentation – just based on word-of-mouth, which was a violation of the Purchase of Service Agreement (POS)" (i.e. DCC contract with ACS)." (It was also non-compliant with the Generally Accepted Principles of Accounting). About three hours after I sent that e-mail, his Supervisor unilaterally decided that my current assignment was due in about three working hours. I had no knowledge of his/their unilateral expected time limit until about four and one-half (4½) hours after his/their unilateral expected time limit passed. Furthermore, such functions are done according to my time residue.  —8h

7.  About two and one-half (2½) hours after their unilateral expected time limit passed, which I was still unaware of, the Supervisor sent me his e-mail dated August 10, 2006, 2:26 PM accusing me of "Unacceptable Work Performance." His accusation was unsupported by the  —8i

ROYDEL HOWE                                                                 EXHIBIT C

## A BRIEF SURVEY OF MY EMPLOYMENT TENURE WITH THE CITY OF NEW YORK AND THE ENSUING CONDITIONS

existing facts. I believed that his e-mail was retaliation to my e-mail of August 9, 2006, in his continued state of manufacturing a case of disciplinary action against me. These incidents happen only to me, not to my other two co-workers who were learning from me. To date, that "current assignment" showing the amount payable to five terminated DCC employees has not being paid, and no one intervened. I was barred from contact with other Departments, and compelled to work in isolation, so I could not intervene. —8i cont'd

8. On November 16, 2006, my Supervisor sent me another e-mail accusing me of "Poor Work Performance" and stated that: "This will, of course, be considered during your annual performance evaluation." He also stated that: "Due to your lethargic performance on previous similar assignments ..." which I interpreted as his attempt to persuade me that "old age" had rendered me incompetent or his barrages of discriminatory and retaliatory pursuits against me have taken its toll. The job function I was performing was similar to that of August 10, 2006. There was no established standard of measurement. Again, His accusation was unsupported by the existing facts. The Supervisor came to my desk; we discussed and agreed upon, and were previously aware of my work schedule for the following week. In less than one hour after leaving my desk, the Supervisor wrote that adverse e-mail about "Poor Work Performance" without any mention of my work schedule we discussed less than an hour before. —8j

9. On October 12, 2006, the Supervisor prepared only for me, and not for my other two co-workers, my "Task and Standard" which forms the basis for my Annual Performance Evaluation at the end of the year. I believed that the Supervisor planned to use the Annual Performance Evaluation process as a tool against me in his determination to terminate me, or initiate disciplinary action against me. —8k

10. In addition, to the severe and significant disparities the Supervisor created and maintained between my other two co-workers and myself, even though, only two of us were available, to review for compliance, about 500 DCC fiscal operations records. Neither the Supervisor, nor my other two co-workers did accounting before. Whatever function they performed in the Unit, they learned directly or indirectly from me. —8l

11. At the end of the year, the Supervisor would have provided himself with ample documentation that he appropriately warned me about poor/unacceptable work performance, and I failed to improve. Therefore, he has grounds to Rate my Annual Evaluation Performance as "Unsatisfactory, or Unratable" which allows him the option to recommend my "Demotion, or Suspension, or some other unfavorable condition" injurious to me. —8m

12. I believed that the Supervisor pursued such adverse employment practices against me because, inter alia; I was Black, I was over sixty years of age, and the oldest employee in the Unit. —8n

---

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See Privacy Act Statement before completing this form.

RECEIVED FEB 20 2007 EEOC-NYDO-CRTIU

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA  ☒ EEOC | EXHIBIT D |

_____ and EEOC
State or local Agency, if any

**NAME** (Indicate Mr., Ms., Mrs.): Mr. Roydel Howe
**HOME TELEPHONE** (Include Area Code): (718) 526 1999
**STREET ADDRESS**: 169-04 88 Avenue
**CITY, STATE AND ZIP CODE**: Jamaica, NY 11432
**DATE OF BIRTH**: 2/15/42

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

**NAME**: NYC/ACS
**NUMBER OF EMPLOYEES, MEMBERS**: Thousands
**TELEPHONE** (Include Area Code): (212) 361 6436
**STREET ADDRESS**: 66 John Street, 8th Fl.
**CITY, STATE AND ZIP CODE**: New York, NY 10038
**COUNTY**: New York

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es))
☒ RACE  ☒ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (Specify)

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST: 10/26/01    LATEST: 11/16/06
☒ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

From October 2001, and continuing unchecked, nonstop, through November 2006, ACS practiced various forms of discriminations against me. ACS encouraged, rewarded, and supported one of my coworkers to create and maintained very hostile work environment, and discriminatory practices against me, such that should compel me to retire, or be fired, or suffer mental breakdown, or induced heart attack, or just run away, or start a fight with that coworker. Exhibits: A13; B3-4; G6, ¶31; G9.

I "toe the line", kept my job, while other employees went, as it were, "without borders." Then Mr. Gold covertly, and overtly, revealed a process to terminate me along with practices to make me feel so inferior and inadequate, that I should just run away. Exhibits: B5; B25-31; F8; G2-13; H1-4.

In vain, I sought relief from different sources. Exhibits: (A1, B53, B56-58); A4-5; A31; B42-43.

Not all of the comments and actions were in writing, but some of my correspondences resulting from those various actions of discriminations were hereto attached and referred to as Exhibits A through Exhibits H, along with a narrow summary of my complaints.
Roydel Howe, February 20, 2007

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Roydel Howe*
Date: 2/20/2007   Charging Party (Signature)

**NOTARY** - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

ROYDEL HOWE          EXHIBIT D

ROYDEL HOWE
169-04 88 AVENUE
JAMAICA, NY 11462

(718) 526 1999     roydel2@msn.com



February 20, 2007

U.S. Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, NY 10004-2112

### COMPLAINTS ABOUT ACS ACTIONS OF DISCRIMINATION AGAINST ME

**Description of the injuries I sustained, times, and events that evidenced Administration for Children's Services (ACS) Personnel actions of discrimination and the like against me, from October 2001 nonstop through November 2006.**

The attached Exhibits from A through H further support my descriptions, and also further support and provide the historical background of the related issues.

**Some ACS Personnel referred to in my complaints**

1.     Mr. Bernard Gold was my Supervisor and Director (two separate titles). Mr. Larry Thomas, Executive Director, was Mr. Bernard Gold's Supervisor. Mr. Trevor Simpson, was the coworker used to create and maintained many of the circumstances and conditions I complained about.

---

**Statements of Discrimination**
2.     My complaints against ACS from October 2001, through November 2006, states that:
      a).     ACS discriminated against me because of:
            i).     My age – being almost sixty-five (65) years of age
            ii).     National Origin – being from the West Indies (Caribbean)
            iii).     My color – being black
            iv).     Race – being of African descent

ROYDEL HOWE

    v).     Sex – being male. The female employee in my Unit was regarded with respect, and dignity, and was paid about $16, 000 per annum more than I was for doing similar work, which she gradually learned from me – no equal work, equal pay

b). Reprisal and Retaliation against me for having written continuously about the nonstop unfair treatment carried out against me, and my refusal to cede my employment, among other reasons

c). Lack of: respect, human dignity, and ethics

d). Harassment

e). Provocation

f). Intimidation

g). Threatening

h). Arbitrary Repression

i). Removed from me vital sources of communication, information, equipment, and training necessary to perform my work and then accuse me of unacceptable and poor work performance

j). Created hostile and vicious working conditions that were intended to prevent me from performing my work assignments, and thus compel me to cede. I often times take home my work to do it late into the nights, weekend days, and nights; because of a lack of adequate mental composure at work; while Mr. Gold continued to accuse me of unacceptable and poor work performance

k). Everyone in my Unit learned the work of the Unit directly or indirectly from me, and that was never respected or recognized

l). A barrage of continuous, meditated false statements against me, calculatingly designed to be severely defamatory in such a way that should compel my termination, or retirement, or mental breakdown, or heart attack – considering I was black and almost 65 years of age; since I did not succumb to their Mr. Simpson's unceasing bizarre behaviors, which remain unchecked, uncorrected, to date.

---

**Statements of Continuation**

3.     Since the actions of discrimination and the like that I complained about never ceased, but kept recurring, and I kept complaining, although many of those actions of discrimination and the like were never recorded; those actions of discrimination and the like from October 2001, through November 2006, ought to be considered as one single set of actions of discrimination and the like, committed by one group of Personnel against the same one person (me); and to date remained unceasing, unchecked, and uncorrected by the Agency.

4.     Each action was a result of the previous action, propelled by the same set of circumstances, i.e. they wanted me out, and I was still there. Each previous action of discrimination and the like, was renewed – made current, by the following repeated actions of discrimination and the like at the time such repeated actions occurred, by the same Personnel, with the same set of circumstances.

5.     For example, on October 30, 2001, my memorandum indicated that: "I reported this matter to both my director and executive director, and requested that he or I be removed to another seat/location. They both said and agreed, "You should cooperate with the next person

and live with it. We just moved here. Many things that exist now are not permanent. We are expecting changes in the future." ¶3. "Thus I returned to my location without any relief. A relief that I pursue today, because I can't live without breathing, and I take much pride in the exemplary and effective performance of my job functions." ¶4. Exhibit A13, ¶3-6.


8U cont'd

6.  My memorandum dated September 13, 2006, indicated that on July 21, 2006, Mr. Gold, and Mr. Thomas (i.e. the director and executive director) convened a meeting to address Mr. Simpson's complaints about food odor, and concluded that they would write a memo to staff not to eat food at their desk. Exhibit G6, ¶26, 27. (Compare with Exhibit A10, ¶5). They never told him to cooperate and live with it. There were about 40 available seats/locations available, and they never permitted me to change my seat. Exhibit A13, Related Comments. They never asked Mr. Simpson to move. They instructed the staff to cease eating food at their desks. They indicated that I should move for the second time, but never ceased or instructed Mr. Simpson to cease his abnormal behaviors I complained about. They never convened a meeting for me, or in anyway addressed any of my complaints from October 2001 to date, except once - October 3, 2003. Exhibit A32, ¶3 (Compare Exhibits A5, Possible Alternative and B41, ¶3). I am still without any relief.

-8V

7.  The only changes are the frequency and intensity of each occurrence. On November 16, 2006; at the same time the other two employees in the Unit were doing and redoing their similar assignments; Mr. Gold made arbitrary accusation of "Poor Work Performance," and nearing the end of his first paragraph, "Due to your lethargic performance ..." Exhibit H2; after I already established that: "I take much pride in the exemplary and effective performance of my job functions." ¶5 above. On December 4, 2006, I sent an e-mail, Exhibits H3-4, to Mr. Gold, requesting clarification of his e-mail of November 16, 2006, Exhibit H2, as usual, I received no response.

-8W

8.  Examples #2. On June 10, 2002, I addressed an e-mail to Mr. Gold and Mr. Thomas, that Trevor Simpson sprayed air freshener on the food I was eating, and thereby threatens my health and my life. Exhibit A18. I received no response. On January 5, 2004, I addressed a Memorandum to Mr. Larry Lee, Associate Commissioner, and CC: Mr. Gold, and Mr. Thomas, that: Trevor Simpson again sprayed air freshener on me; and this time on another employee too, whom he threatened, and intimidated. Exhibit A36, ¶4. I received no response.

-8X

9.  I have sent myriad numbers of e-mails to Mr. Gold, Mr. Thomas, and Associate/Deputy Commissioners that: Trevor Simpson behaviors disturbed me and hindered my Work Performance. Exhibit B12; B49; G7, ¶32; B4; I received no response from Mr. Gold, or Mr. Thomas. In Exhibits B12, the Associate Deputy Commissioner, Ms. Jennifer L. Marino, Esq., response was that: "Is Trevor wearing his earphones for his music? If so, how is this bothering you?" Please compare that response with the stipulated Rules and Regulations that: "Employees may not use personal radios or televisions in work areas during working hours." Exhibits B14; A27, Item 36.

-8Y

10.  On May 20, 2005, Mr. Gold sent me an e-mail indicating that various employees complained against me. Exhibit B37, ¶5. I responded to Mr. Gold, by way of my memorandum dated May 30, 2005; Exhibits B25-31. Pleas note that Mr. Gold's allegations were a single unrepeated occurrence, framed to complement his own subjective agenda. I have been complaining for years and Mr. Gold did not attempt to attend my complaints, or in anyway grant me any relief. In addition, please refer to Exhibits: B47: D9, item g – D17, item G – "... It should go from you to your supervisor ..." (referring to Mr. Chappell), and Exhibits: B40, B46,

-8Z

C13, (referring to Payment and Audit Review Units within ACS Financial Services [Contract Services] that I should not contact). No form of corrective action was ever instituted against Mr. Simpson, or Mr. Gold. Exhibits: B59; C1, ¶4; C9, G3, ¶8.  —8z cont'd

---

**Some Statements of Times and Events**

11. In the absence of cessation or correction of those incidents and circumstances; working conditions, lack of respect, lack of ethics, lack of fair treatment, etc. got worse. In June 2003, I wrote that: "I was mentally abused at my workstation for substantially two years by another employee, because of managers non-adherence to agency standards as prescribed by ACS established Policies and Procedures ..." The only change was that things got worse. Exhibits A5-A12.  —8aa

12. **Violations of Agency Rules and Regulations, Policies, and Customary Practices** – Some of Mr. Gold's policies and practices executed against me or caused to be executed against me to the detriment of my life, my health, my continued employment, my work performance, the Day Care Centers, (DCC) and the Agency's official business; nonstop from October 2001, through November 2006, included but not limited to: total absence of all forms of respect, courtesy, and ethics. (Exhibit G9), and other employment related rules of laws, including EEOC policies, and the Contract Bargaining Agreement (CBA).  —8bb

13. Mr. Gold's correspondences to me were in fact Retaliation and Reprisal, for my correspondences to him, plus the Union was calling him, and he was aware that I sent correspondences to many other Responsible Personnel. Mr. Gold' correspondences to me included, but not limited to Exhibits: B5, C6, D6, D10-12, F8, H1-2. My correspondences to Mr. Gold included, but not limited to: Exhibits: B4, B12-13, B16, B25-31, B40, B45*, B46*, C13*, B47, B48, B50-51, B58 – Mayor's Office, C6-C10, D5, D8-D10, D12, F8, G2-13, H3-4.  —8cc

14. My annual Evaluation Performance report was a CBA requirement, but the last one I signed was August 1999, with a rating of "Very Good." On October 12, 2006, I signed a Task and Standard form for the period 10/1/06 to 9/30/07, which when completed by the Supervisor 9/30/07, becomes my annual Evaluation Performance report for that period. Apparently, the Supervisor prepared a Task and Standard just for me, based on my Step 1 Contractual Grievance. Exhibits G2-8.  —8dd

15. Mr. Gold did not prepare a Task and Standard for the other two staffs in the Unit, so that they would not have an Evaluation Performance report at 9/30/07.  —8ee

16. By November 16, 2006, or about one month after I signed the Task and Standard form, Mr. Gold sent me an e-mail with allegations about "Poor Work Performance", "Due to your lethargic performance", and stated that: "this will, of course, be considered during your annual performance evaluation." Exhibit H2. So that the Task and Standard/ Evaluation Performance report amounted to an additional tool Mr. Gold institute against me, and not the other two staffs in the Unit.  —8ff

17. A very wide range of various disparities were created and maintained especially between the other two employees in my Unit and myself. The following Exhibits name some of those disparities. Exhibits: G6-7, ¶31; G27; D8-9, Some First Time Occurrences.  —8gg

---

**Some Statements of Injuries I Sustained and Endured**
18.   Of course, I was injured more severely, and in more ways than I alone can today identify. However, I attempt to name some of those injuries as follows:
   a).   Mental Injuries
   b).   Physical Injuries
   c).   Social Injuries
   d).   Economical Injuries
   e).   Professional Injuries

**Some details of those injuries are as follows:**
19.   a). **Mental Injuries.** I was tormented by my realization that I was permanently stripped of all the Rights, Benefits, and Privileges that I was entitled to as a human being; and there was no one from: ACS Heads of Departments (Exhibits A31 and B17, A34, A32 and A36-37, B49); through ACS Commissioner (Exhibits B42-43); through the Mayor of the City (Exhibits A1 and B53, B58); to have pity on me; despite my ongoing pitiful pleas to them.

20.   It was always been my deep and sincere conviction that just like any other American citizen, I have all the Rights, Benefits, Liberties, and Protection set forth in:
   i.    Our Constitution, of 1776, and the Amendments thereto
   ii.   The Civil Rights Act of 1964
   iii.  The United Nations Universal Declaration of Human Rights, adopted and proclaimed December 10, 1948
   iv.   The Statutory Laws of our various Legislatures
   v.    Ordinances, Court Decrees, Union Contracts, Agency Rules and Regulations, and particular customs practiced among a given race or group of people or a location
21.   When ACS denied me all of the above, and thereby declared that they would not regard me as a human being, but acknowledge that I was an employee; I felt that ACS was telling me that I was a symbol or a robot – drop in a quarter ($0.25) and out comes a soft drink – a finished product, that identified me as an employee.
22.   ACS attitudes included forms of: inaction, no answers, staffs in the loop, jokes, gestures, blame and accuse me, allow others privileges and benefits they denied me, you don't know that, you don't suppose to know, and even if you did know you are expected to suffer quietly and pretend to be happy. I failed to comply, and instead pleaded for help to get relief therefrom. ACS retaliated with heavy machinery and maneuvers against which I had no defense. After 25 years of diligent service, and almost 65 years of age, this is what ACS delineated to me. Does ACS Personnel have any tendency of human quality? (Exhibits B42, items 1, 4; B1).
23.   My mind and memory were preoccupied both nights and days with Mr. Simpson's voices and behaviors, and fears of the wanton workplace surroundings his unchecked life threatening behaviors created, or as another employee wrote, "Mr. Trevor Simpson's obnoxious behavior." Exhibit G15 subject. Wherever I was, whatever I was engaged in, imposed upon my mind and memory, against my will and desire, were the voices, behaviors, and fears of Mr. Simpson that live inside of me – against my will, against my desire; and so removed from within me the feelings of happiness, the belief that I should be happy and the ability of wanting to be happy.
24.   My mental ongoing contemplation, both days and nights about Mr. Gold and Mr. Thomas et. al. inactions towards Mr. Simpson's nonstop flagrant violations of the Agency's Rules,

Regulations, and Procedures – Code of Conduct, Exhibit G9. Years of unattended employees complaints. Exhibits: A5-13; B4; E3-6; E10, ¶6-7; G10, ¶1, 6; G14-16.   _8nn cont'd_

25. **b). Physical Injuries.** One of the characteristics of Black men, was that they die in large numbers from myocardial infarction (heart attack) in their 40's and 50's years of age. In my mind, at almost age 65, I am living overtime, I am anxious and afraid from my mental picture of my age, race, and day-to-day working conditions.   _– 8oo_

26. One of the primary causes of heart attack was "stress." The Union, DC37, and ACS Quality of Work Life (QWL) Committee have conducted many seminars about "stress", along with participants sharing information, illustrations, and personal experiences about: the causes, the symptoms, the impact on the body and quality of life; and some actions each of us could take to minimize the impact.   _– 8pp_

27. My Supervisor's, and one coworker's behaviors and ACS's inaction thereto, were the major causes and sources of my stress; and my only remedy was to: retire, or have a heart attack and die on the job, or have a mental breakdown, or be terminated. Exhibit B1.   _– 8qq_

28. **c). Social Injuries.** Mr. Gold barred me from contact with many other ACS employees, and resources, even though, the adverse consequences on my work performance, the timing and thoroughness of my completed assignments, and the benefits the DCC receive from ACS's oversight have been severe; and I constantly pointed out that I work in isolation.   _– 8rr_

29. My coworkers have access to people, places, information, and other resources that I do not. Mr. Gold allowed my coworkers privileges, and liberties that he denied me. Please refer to the above paragraph #17 Exhibits. Mr. Gold's attitude was to have my coworkers demonstrate that they were a superior person to me, and they have power over me, accompanied by their jokes, innuendoes, uncalled for comments, names of people and their titles they contact, but know that I was barred from following suit. They work leisurely, I was always at full speed and on a hurry.   _– 8ss_

30. It was my belief that Mr. Gold's behaviors, supported by ACS, carried with it the ambition to take from me, my sense of self-respect and human dignity, and remove all sense of safety from me. So that I should never be at peace, I should never feel free, and no form of justice should attend me. The confluence thereof, resulted in a reduced quality of work-life, and quality of life away from work, because the feelings and memories were always present with me.   _– 8tt_

31. My life experiences at ACS should bear a reflection of the year 1856 court case, Dred Scott v. John F. A. Sanford, in which Chief Justice, Roger Brooke Taney, a slave owner from Maryland decision stated that: "The Blackman had no rights that the Whiteman was bound to respect … and had no rights or privileges but such as those who held the power and the government might choose to grant them."   _– 8uu_

32. **d). Economical Injuries.** Since 2001 to date, a forced retirement would have caused my Social Security benefits to be reduced by 7%-25%, and my Pension benefits reduced about 20% (A higher union salary results in higher Pension benefits).   _– 8vv_

33. I am the only employee in the Child Care and Head Start Division (formerly ACD), from 1995, who was never given a meritorious increase or job promotion. Most, if not all raises and promotions were based on Management's decision – not on exams or applications.   _– 8ww_

34. The above factors also served to:
   i. Lower my social standing among my coworkers in terms of perceptions and station of life, including appearance — 8xx
   ii. Significantly reduced my ability and capacity to life, liberty, and the pursuit of happiness
   iii. Used as an instrument to compel me into believing and accepting that I was not worthy of, and should not expect of others respect, or ethics, or fair treatment

35. **e). Professional Injuries.** I felt that for me to retire at the same level of job title and job responsibilities (non-managerial) I started at more than twenty-five (25) years ago, bears some resemblances to a child being born, grows up, matures, and dies at the same size he was born. — 8yy

36. I continuously sent out job applications for flyer positions I saw as professional advancement, or could lead to advancement for me. In the last three-to-four years, I sent out more than thirty applications. I got an occasional acknowledgement of receipt from the recipient of my application, but was never offered any job interview – not even one. About July 2006, both Mr. Gold and Mr. Simpson were offered and attended job interviews, resulting from their applications for flyer positions. — 8zz

37. One composite factor that all my job applications, inquires, and efforts had in common, was that any offer for a new position, or interview, would have to pass through, approve, and authorized by my Supervisor, Directors, and some heads of Departments, in ways above and beyond written policies. As indicated throughout my complaints, those employees (Supervisor, Directors, or Heads of Departments), were not going to do for me anything that was good or from which any good could result. — 8aaa

38. Denial of promotions I believed I had earned, or was entitled to, barred me from applying for some other positions and examinations, because I did not have the required Supervisory experience, and held me at a lower salary. I was the only employee in Child Care and Head Start Division from 1995, who was never promoted. While the skills exhibited in the work I performed were professional and exemplary — 8bbb

39. The denial of promotions I believed I had earned and was entitled to, also barred me from utilizing some of my professional skills I acquire and developed, and also diminished the extent of Technical Assistance available to the Day Care Centers. Thereby compromised the Agency's oversight to the Day Care Centers, and my job satisfaction. These were emblematic of larger problems to which I was expected to acquiesce as an embryo, while they wrench and wrest form me: a manufactured termination, or an induced heart attack, or a forced retirement, or mental breakdown; in an environment where there was neither cessation nor correction of the endless violations of every sort. — 8ccc

**I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct to the best of my knowledge.**

Print Name: Roydel Howe

Signature: _Roydel Howe_

Date: February 20, 2007