UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ROYDEL HOWE,

        Plaintiff,

    -v-                             No.  07 Civ. 6079 (LTS)(THK)

THE CITY OF NEW YORK et al.

        Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Following his receipt of a Notice of Suit Rights from the United States Equal Employment Opportunity Commission ("EEOC'), plaintiff Roydel Howe ("Plaintiff"), proceeding pro se, commenced this action on June 27, 2007.  Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 ("ADEA"), Plaintiff asserts claims of failure to promote, unequal terms and conditions of employment, and hostile work environment, against the City of New York and the New York City Administration for Children's Services ("ACS" and, collectively, "Defendants").  Plaintiff also alleges that Defendants' alleged mistreatment of him was retaliatory.  In Plaintiff's Charge of Discrimination filed with the EEOC, he asserted that the alleged discrimination was based on race, color, sex, national origin, and age.[1]  The Court has jurisdiction of this action

---

[1]    The Charge of Discrimination asks complainants to check appropriate boxes to indicate on what bases the alleged discrimination occurred.  (See Compl. Ex. D.) Plaintiff checked boxes for race, color, sex, national origin, age, and retaliation. Title VII prohibits employers from retaliating against employees who complain of otherwise prohibited discrimination.

pursuant to 28 U.S.C. § 1331.

Now before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Court has reviewed thoroughly all of the parties' submissions in support of and in opposition to Defendants' motion.  For the reasons explained below, Defendants' motion for summary judgment is granted in its entirety.

BACKGROUND

The following facts are undisputed unless characterized as allegations.[2]  In his complaint, Plaintiff states that his race and color are "black," his national origin is "Jamaica, W.I.," and his age is "65."  (Compl. 3.)  Plaintiff is currently an Associate Accountant for ACS, and has been at ACS since at least July, 1995.  (Barnett Decl. Ex. B ("Howe Dep.") 189:17.)  In October 2001, Plaintiff's department moved to a new location at 66 John Street, in Manhattan, New York.  (Howe Dep. 106:18.)  Around that time, Bernard Gold became Plaintiff's immediate supervisor (id. 108:10).  Gold was supervised by Larry Thomas.  (Id. 131:2.)  Following the move, Plaintiff was seated next to a co-worker named Trevor Simpson.  (Id. 132:15.)  Plaintiff's allegations concern incidents that occurred after his move to the office at 66 John Street (id. 92:25) and are principally concerned with the behaviors of Simpson and Gold (see Compl.).

---

[2]     S.D.N.Y. Local Civil Rule 56.1(c) provides that "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Although Plaintiff did not submit a statement of material facts in opposition to the statement submitted by Defendants, because of Plaintiff's pro se status, the Court declines to deem all of Defendants' factual assertions to be admitted without an examination of Plaintiff's evidentiary proffers.  See Allen v. City of New York, 480 F. Supp. 2d 689, 704 (S.D.N.Y. 2007) (holding that because of Plaintiff's pro se status, "the Court declines to accept blindly as 'admitted' all factual averments made by Defendants").  The following summary reflects the Court's examination of the record.

Plaintiff alleges that Gold and Simpson "created: inhumane, unbearable, fearful, violent and hostile working conditions, and workplace environment[.]"  (Compl. Ex. C ¶ 5.) Specifically, Plaintiff testified at his deposition that Simpson talks constantly, takes medication and shakes a bottle containing his medication, mumbles to himself, sometimes gets angry and yells at co-workers or hits his desk, and refers to people in a way that is "less than what a professional person should do."  (Howe Dep. 133:15–134:5.)  Plaintiff also stated that Simpson had told him to "drop dead, you foolish ass."  (Id. 136:14.)  Plaintiff alleges that Simpson's behavior interferes with his work by making him unable to "concentrate" and "function."  (Id. 143:9–13.)  Plaintiff further alleges that Simpson's behavior has been "ongoing" since October 2001.  (Id. 132:25, 134:25.)

Plaintiff alleges that he complained about Simpson's behavior verbally to both Gold and Thomas, who informed Plaintiff that they would "make some changes."  (Howe Dep. 136:19–137:6.)  Plaintiff alleges that he had complained about Simpson's behavior "continuously" (id. 139:17) up to the date of his deposition (id. 139:4), and that he had begun to discuss these issues with his union around 2002 (id. 140:2).  Plaintiff further alleges that his complaints regarding Simpson were not adequately addressed.  Regarding his supervisor Gold's alleged inaction, Plaintiff testified that "when I take complaints to him, he does nothing about my complaints" (id. 152:24–153:1).  In addition, Plaintiff stated that "Mr. Gold never attempted to correct Mr. Simpson in any way whatsoever that I'm aware of and every means and occasion Mr. Gold gets he would seek to correct me[.]"  (Id. 159:17.)  Gold testified at his deposition, however, that "anytime that I or we . . . we including my supervisor, received complaints about any improper behavior that may have occurred or was alleged to have occurred, we did look into it and we attempted to address it . . . by trying to look into the specifics, the validity of the complaints." (Pl.'s Affirmation Ex. R ("Gold Dep.") 2–8.)

Plaintiff was given the opportunity to change his work station.  In response to his complaints, Plaintiff was moved to a desk "five feet" from where he had been (Howe Dep. 138:9), but that did not remedy the situation because Simpson continued his behavior in Plaintiff's vicinity (id. 138:12).  Thomas told Plaintiff that he was "free to move" and could "choose any seat" he wanted, but Plaintiff chose to "retain [his] seat against the wall."  (Id. 144:4-7.)

Plaintiff also alleges that Gold treated him differently from the other two individuals in his department, Simpson and Orphia Crump ("Crump").  Plaintiff alleges that Gold "demanded more time in the field from me, but the other workers weren't putting in work at that time going to the field."  (Howe Dep. 150:9.)  Plaintiff alleges that he "didn't see [Simpson] putting in any field reports."  (Id. 150:17.)  Regarding his and Crump's field visits, Plaintiff testified that they both sometimes go to the field three or four days a week, or not at all.  (Id. 151:10.)  Plaintiff testified at his deposition that Simpson is African-American and, in 2001, was in his "high 40s to low 50s." (Id. 135:23, 136:7.)  In addition, Plaintiff testified that Crump is African-American, from Barbados, and "maybe in her 50s."  (Id. 152:13-20.)

Plaintiff acknowledges that Gold sent memos to the three individuals in the department, but alleges that "while [Gold] may address it to the three of us, me alone is intended. . . . That's my belief."  (Howe Dep. 153:6.)  Plaintiff testified that Gold's behavior towards him was "oftentimes disturbing" (id. 155:24), specifically because he "took away my computer that I built" (id. 155:24), asked him to "write my time . . . while the other two did not have to do that" (id. 156:11), and "took away my printer I have on my desk and caused my walking distance to the printer to be overburdensome [sic] and it causes me much hardship" (id. 156:19).  Gold testified that he was not aware of someone removing Plaintiff's computer (Gold Dep. 1C-13), and does not remember telling anyone to remove Plaintiff's printer (id.).  Additionally, Gold testified that the

printer on Plaintiff's desk was "unauthorized equipment" (id.) and it was removed because "just like everybody else, [Plaintiff was] supposed to use the network printers" (id. 1C-13–1C-14).

Plaintiff alleges that he is "the only employee [in his department] who was never given a meritorious increase or job promotion."  (Compl. Ex. D ¶ 33.)  Plaintiff asserts that he "sent out job applications for flyer positions . . . but was never offered any job interview - not even one." (Id. ¶ 36.)  At his deposition, with regard to his failure to promote claim, Plaintiff testified only that "I went to [Thomas] asking [Thomas] for a job.  The interviewed [sic] continued for two years until we start making appointment and it was never kept."  (Howe Dep. 126:23.)

Plaintiff additionally alleges that he received two e-mails from Gold criticizing his performance as retaliation for "my correspondences to him, plus the Union was calling him, and he was aware that I sent correspondences to many other Responsible Personnel."  (Compl. Ex. D ¶ 13.)  The first e-mail that Plaintiff refers to specifically in his Complaint is dated August 10, 2006. In it, Gold states, in reference to a project that Plaintiff was working on:

> Your performance in this project has failed to meet job expectations
> and is unacceptable.  You have had two months to do this.  Others in
> your unit have already submitted time and leave analyses for several
> programs with many employees and you have not submitted the
> analysis for the one program . . . with only five employees.

(Pl.'s Affirmation Ex. F8.)  The second e-mail that Plaintiff specifically characterizes as discriminatory is dated November 16, 2006, and was also written by Gold.  It states:

> I must, once again, bring to your attention another example of your
> failure to perform your work assignments in an acceptable and timely
> manner . . . Due to your lethargic performance on previous similar
> assignments, I assigned you the fewest number of employees whose
> accrued time needed to be calculated.  In spite of this, you lagged
> behind the other workers in the unit in completing the assignment
> and, in fact, did not complete it . . . This will, of course, be
> considered during your annual performance evaluation.

(Pl.'s Affirmation Ex. H2.)  Gold testified at his deposition that "Mr. Howe had a history of being very tardy in his work performance."  (Gold Dep. 1C-19.)

Plaintiff stated in his complaint that he interpreted Gold's use of the word "lethargic" in the August 10, 2006, e-mail as "[Gold's] attempt to persuade me that 'old age' had rendered me incompetent[.]"  (Compl. Ex. C ¶ 8.)  Plaintiff testified that his belief that Thomas discriminated against him is "not a strong belief."  (Howe Dep. 144:18.)  When asked at his deposition what he believes Thomas' basis for discriminating against him was, Plaintiff testified that he "can't say what his basis would be.  One of the things I felt that he wanted me out.  I can't say it's because I'm black or I'm from the islands.  From the beginning I couldn't give you a basis." (Id. 145:25–145:3.)  However, as far as he believes that Thomas did discriminate against him, Plaintiff alleges that Thomas did so by

> put[ting] me in positions I couldn't survive.  I would have to quit.  I cannot do the work.  I go to work and sit at my desk and I have to leave it because of the disruptions caused by Mr. Simpson.  I would have to leave and it's as if management doesn't care or are they telling him to behave like he should.

(Id. 144:23–145:3.)

Plaintiff testified that Gold never made any comments or statements to him concerning his race, color, national origin, or age.  (Howe Dep. 160:4–160:14.)[3]  Plaintiff testified further that Gold never proceeded with disciplinary action against him and that Plaintiff has never

---

[3]    In light of this response and other similar passages in Plaintiff's deposition, the Court construes Plaintiff's reply ("Get out of here, you're too old and I'm Jewish, I don't have to like blacks.  I've been asked more than once how did Mr. Gold discriminate against me.  Did he ever tell you did he discriminate you?  No.  He said it in deeds.") to the question "Do you believe [Gold] discriminated against you . . . How so?" (Howe Dep. 158:25–159:8) as a summary of Plaintiff's understanding of what motivated Gold's alleged conduct rather than as an allegation that Gold actually made such statements.

been brought up on disciplinary charges.  (Id. 160:22–161:5.)  Plaintiff also testified that Thomas

has never made any comments to him regarding his race, color, national origin, or age (id.

147:15–24), and that Thomas never recommended or commenced any disciplinary action against

Plaintiff, has never recommended or tried to terminate Plaintiff's employment, and has never

reprimanded him in any way (id. 147:14–148:9).  In June 2008, when his deposition testimony was

taken, Plaintiff testified that he was still employed (id. 189:14) in the same unit (id. 189:17), was

still a member of the union (id. 189:20), and from 2005 through 2008 had been receiving regular

increases in his salary in accordance with the union contract (id. 189:23).

Plaintiff filed a Charge of Discrimination with the EEOC on February 20, 2007.

(Compl. Ex. D.)  On April 2, 2007, the EEOC dismissed Plaintiff's charge and issued him a right to

sue letter along with the determination that: "Based upon its investigation, the EEOC is unable to

conclude that the information obtained establishes violations of the statutes."  (Id. Ex. B.)  Plaintiff

filed his complaint in this court on June 27, 2007.

## DISCUSSION

Summary judgment should be granted when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  "[A]n

opposing party may not rely merely on allegations or denials in its own pleading; rather, its

response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a

genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  An issue of fact is genuine if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party," and a fact is considered

material "if it 'might affect the outcome of the suit under the governing law.'"  Holtz v. Rockefeller

& Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986)).

        The moving party bears the burden of establishing the absence of any genuine issue of material fact.  <u>Anderson</u>, 477 U.S. at 256.  However, "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)). "Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact.  <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir. 1998).  The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

        Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a) (West 2003).  Additionally, under Title VII, it is illegal for an employer to "limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(b) (West 2003).  Title VII also prohibits employers from retaliating against an employee for complaining about prohibited employment discrimination.  The statute provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C.A. § 2000e-3(a) (West 2003).

Similarly, the ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," and to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C.A. §§ 623(a)(1)-(2) (West 2008). The ADEA also prohibits employers from retaliating against an employee for complaining about prohibited employment discrimination. 29 U.S.C.A. § 623(d) (West 2008).

Statute of Limitations

Claims brought under Title VII are subject to administrative agency complaint filing requirements as set forth in 42 U.S.C.A. § 2000e-5(e)(1). A charge of discrimination must be filed within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5(e)(1) (West 2003). An individual filing a claim regarding a "discrete retaliatory or discriminatory act" in a state that has its own antidiscrimination law and agency must file a charge within "300 days of the date of the act or lose the ability to recover for it." Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Specifically for claims premised on incidents of discrimination and retaliatory employment decisions, "only incidents that took place within the timely filing period are actionable." Id. at 114. However, a hostile work environment claim is different because it more often involves "repeated conduct." Id. at 115. Therefore, to the extent that the incidents allegedly constituting a hostile work environment "are part of one unlawful employment practice," a charge for hostile work environment is timely if filed within 300 days "of any act that is part of the hostile work environment." Id. at 118.

Plaintiff here filed his Charge of Discrimination with the EEOC on February 20,

2007.  Under the <u>Morgan</u> standard, Plaintiff's claims that are premised on discrete acts that occurred before April 26, 2006, <u>i.e.</u>, 300 days before the filing of the EEOC charge, are time-barred.  However, Plaintiff alleges that his employers' allegedly unlawful behavior has continued since that time in the form of a hostile work environment.  Therefore, his hostile work environment claims based on this time period are not clearly time-barred.

<u>Title VII Claims</u>

For a claim pursuant to Title VII to survive a summary judgment motion, a plaintiff must establish a prima facie case of discrimination under the standard set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  To do so, a plaintiff must show: (1) that he belongs to a protected class, (2) that his job performance was satisfactory, (3) that he suffered adverse employment action, and (4) that the action occurred under conditions giving rise to an inference of discrimination.  <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 151 (2d Cir. 2006).

Plaintiff alleges that his employer's decisions regarding the content of his work assignments, the location of and supplies at his physical work space in his office, and the scrutiny to which he was subject in his work evaluations were discriminatory in violation of Title VII.  To establish a claim of discriminatory treatment under Title VII, a plaintiff must show "that: (1) he belongs to a protected class of persons; (2) his job performance was satisfactory; (3) he suffered some adverse employment action; and (4) the adverse employment action occurred under conditions giving rise to an inference of discrimination."  <u>Holder v. City of Yonkers</u>, No. 04 Civ. 10314 (LMS), 2006 WL 1582081, at *8 (S.D.N.Y. June 7, 2006).

Here, it is undisputed that Plaintiff is a member of several protected classes.  However, Plaintiff has failed to meet his burden of establishing a prima facie case of prohibited discriminatory treatment because he has proffered no specific facts to demonstrate that he suffered

an adverse employment action.  An adverse employment action is one "which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  Terry, 336 F.3d at 138 (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).  A materially adverse change may be termination of employment, a demotion accompanied by a decrease in wage or salary, a less distinguished job title, or a significant diminution of material responsibilities, among other things.  Id.  However, criticism of an employee is not considered an adverse employment action.  Weeks v. New York State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001) (abrogated on other grounds).  Further, while a negative employment evaluation may be considered adverse, it "must be accompanied by other adverse consequences to the terms and conditions of the Plaintiff's employment in order to qualify as an adverse employment action."  Holder, 2006 WL 1582081, at *6; see also Sanders v. New York City Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004) (holding that a performance evaluation on its own, without proof that it had an effect on the terms and conditions of plaintiff's employment, did not constitute an adverse employment action).

        As Plaintiff acknowledged in his deposition testimony, no disciplinary proceedings have been initiated against him.  At the time the complaint was filed, Plaintiff was still employed by ACS and still receiving regular salary increases.  There is no evidence in the record to indicate that Plaintiff's job title has changed or that there has been a significant diminution of his responsibilities.  Gold's e-mails on August 10, 2006, and November 16, 2006, both indicate that Plaintiff has received a lesser workload than his colleagues, but they do not indicate that Plaintiff has suffered any material change in his job responsibilities.  Further, while Gold's e-mails may be considered negative performance evaluations, without a showing that they resulted in a change in the terms and conditions of Plaintiff's employment, they do not rise to the level of an adverse

employment action.  See Holder, 2006 WL 1582081, at *6 ("[t]he fact that the Plaintiff received

several critical evaluations, alone, without some showing of how these evaluations impacted the

terms and conditions of the Plaintiff's employment, does not raise a genuine issue of material fact

for trial").  Drawing all inferences in favor of Plaintiff, no reasonable jury could conclude that he

suffered an adverse employment action.  Summary judgment in Defendants' favor is therefore

warranted because Plaintiff has not demonstrated that he can establish each element of his prima

facie case.

        Additionally, Plaintiff has not proffered any specific facts from which a reasonable

jury could draw an inference of discrimination.  Plaintiff testified at his deposition testimony that

neither Gold nor Thomas ever made any comments to him regarding his age, race, color, or national

origin.  In fact, Plaintiff stated that his belief that Thomas discriminated against him was not

"strong" (Howe Dep. 144:18), and that he could not say what Thomas' basis for discrimination was

(see id. 145:25).  With respect to his supervisor, Gold, Plaintiff testified that he demonstrated

discrimination in "deeds."  (Id. 159:8.)  Plaintiff has not presented any specific conduct however,

that frames a genuine issue of fact as to whether Gold discriminated against Plaintiff on the basis of

race, sex, color, or national origin.  Drawing all inferences in Plaintiff's favor, a reasonable jury

simply could not conclude that there is a proper basis for an inference of discrimination.

        In his EEOC charge, Plaintiff also alleges a failure to promote in violation of Title

VII.  To establish a prima facie case of failure to promote, a plaintiff must demonstrate that: (1) the

plaintiff is a member of a protected class; (2) the plaintiff "applied for and was qualified for the

job"; (3) the plaintiff "was rejected for the position"; and (4) "the rejection of the plaintiff's

application occurred under circumstances giving rise to an inference of discrimination."  Lomotey,

355 F. App'x at 480 (citing <u>Aulicino v. New York City Dep't of Homeless Serv.'s.</u>, 580 F.3d 73,

80 (2d Cir. 2009)).

   Plaintiff testified at his deposition that he "went to [Thomas] asking [Thomas] for a

job.  The interviewed [sic] continued for two years until we start making appointment and it was

never kept."  (Howe Dep. 126:23.)  Even assuming arguendo that Plaintiff has satisfied the first

three elements of his failure to promote claim, there are no specific facts averred from which a

reasonable jury could reach the conclusion that Plaintiff's job applications were rejected under

circumstances giving rise to an inference of discrimination.  There is simply no evidence in the

record, besides Plaintiff's conclusory allegations as to his understanding of Defendants'

motivations, to support any inference that Plaintiff was not accepted for certain job positions

because of his race, gender, national origin, or sex, in violation of Title VII.  <u>See</u> <u>Dawson v.

Bumble & Bumble</u>, 398 F.3d 211, 224 (2d Cir. 2005) (holding that plaintiff's "merely subjective

assessment of her chances for promotion" did not create an issue of fact as to whether her

employer's failure to promote her was motivated by discriminatory intent).

   Plaintiff also alleges that Defendants maintained a hostile work environment in

violation of Title VII.  To prevail on a hostile work environment claim, a plaintiff must demonstrate

harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment."  <u>Terry</u>, 336 F.3d at 147–48 (internal

quotations omitted).  To be deemed pervasive, hostile incidents must be "sufficiently continuous

and concerted."  <u>Id.</u> at 148.  (internal quotations omitted).  Under this test, the plaintiff must

demonstrate both that the misconduct created an "objectively hostile or abusive work

environment," and that the plaintiff subjectively perceived the environment to be abusive.  <u>Id.</u> at

148 (internal quotations omitted).  A variety of factors may lead to the determination that a

workplace environment is hostile, including the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Id.  (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

An isolated act can meet the threshold, but to do so it must be "severe enough" to establish a hostile work environment and must sufficiently alter the conditions of the complainant's employment.  Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999) (abrogated on other grounds).  Additionally, to establish a claim of hostile work environment a plaintiff must demonstrate that the conduct occurred "because of" a trait, discrimination on the basis of which Title VII prohibits.  See, e.g., Richardson, 180 F.3d at 440 (holding that "to sustain a Title VII hostile environment claim," the complainant "must produce evidence that she was discriminated against because of her race"); Brennan v. Metropolitan Opera Assoc., Inc., 192 F.3d 310, 318 (2d Cir. 1999) ("[a] plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class").

Plaintiff here alleges that his supervisor, Gold, and co-worker, Simpson, "created: inhumane, unbearable, fearful, violent and hostile working conditions, and workplace environment[.]"  (Compl. Ex. C ¶ 5.)  Evaluating the totality of the incidents and conduct that Plaintiff has described, however, no reasonable jury could conclude that Gold and Simpson's conduct created an "objectively hostile or abusive work environment" that is actionable under Title VII.  See Terry, 336 F.3d at 148.  Plaintiff has offered no facts of a threatening or abusive environment.  Although Plaintiff testified that Simpson's behavior interfered with his work performance (see Howe Dep. 143:9), it is undisputed that he was offered the opportunity to change his work location (see id. 138:9).  Plaintiff also alleges that the two e-mails he received from Gold

were discriminatory and contributed to the hostile work environment.  However, there is no

evidence that these e-mails were so severe as to alter the conditions of Plaintiff's employment.  See

Richardson, 180 F.3d at 437.  In sum, drawing all inferences in Plaintiff's favor, and examining the

degree, severity, and frequency of all the conduct Plaintiff describes, there exists no genuine issue

of material fact as to if Plaintiff's work environment was hostile.  As discussed above, there are no

specific facts proffered that would support an inference of discriminatory conduct towards Plaintiff

based on his race, sex, color, or national origin.  Without any evidence that the conduct Plaintiff

suffered was based on at least one of these characteristics, Plaintiff cannot succeed on a hostile

work environment claim.  See Holder, 2006 WL 1582081, at *5 (holding that, "[a]bsent some

averment of specific fact establishing some form of specified harassment based upon the Plaintiff's

race," there is no "genuine issue for trial").

A plaintiff alleging a claim of retaliation under Title VII must establish that the

employer's retaliatory actions "would have been materially adverse to a reasonable employee,"

which means that "the employer's actions must be harmful to the point that they could well

dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington

Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 57 (2006).[4]  For substantially the reasons

stated above, Plaintiff has not offered evidence sufficient to frame a genuine issue of material fact

as to the existence of any materially adverse retaliatory actions undertaken by his employer.

---

[4]     To the extent that Plaintiff alleges a claim under the First Amendment for retaliation,
under a theory that the alleged retaliatory conduct resulted from his speaking out over
misreporting or misconduct by ACS, this claim fails.  Any such speech by Plaintiff
was within his workplace responsibilities and, therefore, Plaintiff did not speak "as a
citizen on a matter of public concern" when raising these concerns to or about his
government agency employer.  See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).

Plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to any of his claims under Title VII.  Summary judgment is therefore granted in Defendants' favor on all of Plaintiff's Title VII claims.

ADEA Claims

The standards used to evaluate substantive claims of age discrimination under the ADEA are the same as those used to evaluate Title VII discrimination claims.  Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009); see also Terry, 336 F.3d at 141, 148 (identical standards apply to hostile work environment claims and retaliation claims that are brought under the ADEA as to claims brought under Title VII).  Specifically, to establish a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate that: (1) the plaintiff was within the protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff was subject to an adverse employment action; and (4) "the adverse action occurred under circumstances giving rise to an inference of discrimination."  Id.

To establish a prima facie case of retaliation under the ADEA, a plaintiff is required to show by a preponderance of the evidence that: (1) plaintiff participated in a protected activity, (2) defendant knew of the protected activity; (3) plaintiff experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.  Nieves v. Angelo, Gordon & Co., 341 F. App'x 676, 679 (2d Cir. 2009).

As explained above, Plaintiff has framed no genuine issue of material fact regarding whether he suffered an adverse employment action.  Plaintiff was never subjected to any disciplinary proceedings, was not terminated or demoted, and suffered no adverse change in salary. Further, none of the conduct of which Plaintiff complains is shown to have "occurred under circumstances giving rise to an inference of discrimination."  See Leibowitz, 584 F.3d at 498.  As

Plaintiff testified, neither Thomas nor Gold ever made any comments regarding his age. Plaintiff interprets Gold's reference to his "lethargic performance" in the August 10, 2006, e-mail as a reference to his age, but he has proffered no admissible evidence beyond this conclusory allegation to demonstrate that it was, in fact, a coded reference to his age. At the summary judgment phase, Plaintiff's conclusory allegation is insufficient to establish a genuine issue for trial. Therefore, summary judgment is granted in Defendant's favor on Plaintiff's ADEA claims.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in its entirety.

This order resolves docket entry no. 25. The Clerk of Court is respectfully requested to enter judgment in Defendants' favor and close this case. Each party is to bear its own costs.

SO ORDERED.

Dated: New York, New York
September 29, 2010

LAURA TAYLOR SWAIN
United States District Judge